UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

Plaintiff,

-vs-                                        Case No.        25-CR-117-JFH

RYAN LEON FRENCH,

Defendant.

DEFENDANT'S MOTION FOR VARIANCE

COMES NOW Defendant, Ryan Leon French ("Ryan"), by and through his attorney of record, Tom Wright, and in consideration of the 18 U.S.C. § 3553(a) factors, respectfully requests the Court vary to an offense level 35 and sentence him to 180 months imprisonment.  In support, Ryan states:

PERTINENT FACTS AND HISTORY

This case involves Ryan watching his seventeen-and-a-half-year-old son (DF) having sex with Ryan's wife (Lexie) through a home security camera.  While this type of relationship is taboo, the term "stepmom" was the number one searched term on pornography websites in the United States in 2016.[1]  That ranking has diminished very little over time.  In 2025, Stepmom porn, combined with MILF porn, was the second most watched pornography category.[2]  Review of the discovery suggests that DF was a willing

---

[1] https://www.glamour.com/story/most-searched-porn-videos-2016
[2] https://www.popstarlabs.com/blogs/sex-stuff/most-watched-porn-categories-of-2025-ranked-rated?srsltid=AfmBOoriVZCzuDcnl8RuI2UmCJOmlDCReuY8g6lKen120gf-Ke0vPmsP

participant in this relationship. Lexie was too. The family played out sexual fantasies with each other in the privacy of their own home.

Ryan is a forty-six-year-old zero-point-offender. He graduated from Wright Christian Academy in 1998 and Tulsa Technology Center in 2000. He worked in the trucking industry since his graduation from Tulsa Technology Center. Before his arrest in this case, he worked for Solis Trucking, LLC. He drove a dump truck 50 plus hours a week.

Ryan lost everything as a result of this case. His mortgage holder foreclosed on his home. His cars have been repossessed or sold. His children were taken by DHS and are either in the custody of his family or in a foster home. His marriage is likely over.

Ryan's childhood was difficult. His father abused him physically and verbally. He moved out of his parent's home at age sixteen. He was later diagnosed with anxiety and PTSD as a result of this abuse. He started abusing substances when he moved out. He used marijuana daily from age sixteen until his arrest in this case. He got a medical marijuana card in 2017. He also abused methamphetamine from age eighteen to twenty-two. He received a prescription for Xanax after his 2016 diagnosis and used that daily until his arrest in this case. He also has medical issues. He underwent a wrist fusion in 2000 and a neck fusion in 2015. He has mobility issues.

Ryan timely received and reviewed the PSR. He submitted objections. His Total Offense Level of 40 and Criminal History Category of I yields a guideline range of 292 to 365 months imprisonment. Sentencing is schedule on April 16, 2026 at 10:30 a.m.

SENTENCING

Congress discouraged the Sentencing Commission from creating a system that imprisons first time offenders who have not been convicted of a crime of violence or otherwise serious offense. Indeed, *28 U.S.C. § 994(j)* provides that prison is generally inappropriate in "cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." In response to Congress' directive, the Sentencing Commission created the United States Sentencing Guidelines, which plays an important role in federal sentencing. The United States Supreme Court in *U.S. v. Booker* found the Sentencing Reform Act of 1984 ("Act") "requires judges to take account of the Guidelines together with other sentencing goals." *U.S. v. Booker*, 543 U.S. 220, 259 (2005). In the ordinary case, the Commission's recommendation of a sentencing range will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. U.S.*, 551 U.S. 338, 350 (2007). However, the sentencing Court ultimately determines whether the rough approximation generated by the Guidelines achieves 3553(a)'s objectives because it is "in a superior position to find facts and judge their import under §3553(a)" in each particular case. *Gall v. United States*, 552 U.S. 38, 51 (2007).

To make this determination, the Court considers "the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *United States v. Booker*, 543 U.S. at 260. The Act further requires the sentencing court to impose sentences that "reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence,

protect the public, and effectively provide the defendant with needed educational or vocational training and medical care." *Id*. citing 3553(a)(2).   In order to accomplish the purposes of sentencing, the sentencing court "shall impose a sentence sufficient, but not greater than necessary." *18 U.S.C. §3553(a)*.  The sentencing judge should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

In determining the appropriate sentence, the sentencing court is required to consider all the factors set forth in *18 U.S.C. §3553(a)*, which include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed –
   (A)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) To afford adequate deterrence to criminal conduct;
   (C) To protect the public from further crimes of the defendant; and
   (D)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) The kinds of sentences available;
(4) The kinds of sentence and the sentencing range established for –
   (A)    The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(5) Any pertinent policy statement –
   (A)    Issued by the Sentencing Commission…
(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) The need to provide restitution to any victims of the offense.

*18 U.S.C. §3553(a)(1)-(7).*

Consideration of the 3553(a) factors show that Ryan is not the ordinary case and the Guidelines' suggested punishment does not achieve 3553(a)'s objectives. Those factors include:

### Nature and Circumstances of the Offense

Ryan watched his wife and seventeen-and-a-half-year-old son have sex on a home security camera. Those videos went to his cellular device.

### History and Characteristics

Ryan is a forty-six-year-old zero-point-offender. He graduated high school and trade school. He worked fifty plus hours a week in the trucking industry for twenty-five years before his arrest in this case. At the time of his arrest, he used Xanax that was prescribed to him and marijuana for which he had a medical marijuana card. He lost his house, vehicles, wife, and children as a result of this offense. He will have to register as a sex offender upon release from prison.

### Seriousness of the Offense, Respect for the Law, and Just Punishment

Ryan possessed and produced CSAM. This is a serious offense. The nature and circumstances of the offense mitigate its seriousness. He watched his wife have sex with his seventeen-and-a-half-year-old son on a home security system for his own personal gratification. He was not selling or otherwise distributing these materials.

Ryan's status as a zero-point-offender shows respect for the law. A sentence of 180 months is just punishment for this offense.

**To Provide Adequate Deterrence to Criminal Conduct and Protect the Public**

Ryan is not likely to re-offend.  He is a zero-point-offender.  He will be near sixty years old when he releases from prison.  He will be a registered sex-offender.

**Education or Vocational Training, Medical Care, or other Correctional Treatment**

Ryan needs no educational or vocational training.  He has a fused wrist and neck that may require treatment in custody.  He would also benefit from sex offender programming.

**Requested Sentence**

Ryan requests a sentence of 180 months imprisonment.  This is the statutory minimum and is sufficient, but not greater than necessary.    It also meets the goals of sentencing.

The nature and circumstances of his offense mitigate the crime and punishment to ensue.  Ryan, along with his wife and son, played out a sexual fantasy that is prevalent and popular on internet pornography sites.  His son was seventeen-and-a-half years old during the offense conduct.   The videos in discovery suggest he and Lexie were willing participants performing sexual acts in the privacy of their own home.  The videos were not distributed.

Ryan's history and characteristics also mitigate punishment.  He is a forty-six-year-old zero-point offender.  He works over fifty hours a week.  He will have to start from scratch when he gets out of prison in his late fifties.

WHEREFORE, for the above and foregoing reasons, Ryan Leon French respectfully requests the Court sentence him to 180 months imprisonment.

Respectfully Submitted,


THE WRIGHT LAW FIRM, PLLC


/s/ Thomas M. Wright
THOMAS M. WRIGHT, OBA 20378
THE WRIGHT LAW FIRM, PLLC
629 West Main Street, Suite 230
Oklahoma City, OK 73102
405.819.0888 (tele)
405.459.0902 (fax)
tom@tomwrightlaw.com
*Attorney for Ryan Leon French*


CERTIFICATE OF SERVICE

I Thomas M. Wright, hereby certify that on this 19th day of March, 2026, I submitted this document to the Clerk of Court for filing and service on all involved parties via the EM/ECF system.


/s/ Thomas M. Wright